2013 COA 98

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jordan LEHMKUHL, Defendant–Appellant.**

Court of Appeals No. 12CA1218

Colorado Court of Appeals, Div. III.

Announced June 20, 2013

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Laura L. Magner, Boulder, Colorado, for Defendant–Appellant.

Opinion by JUDGE GABRIEL

¶ 1 Defendant, Jordan Lehmkuhl, appeals the district court's order denying his Crim. P. 35(c) motion challenging, on cruel and unusual punishment grounds, the constitutionality of sentences he received in connection with acts committed while he was a juvenile. Because we conclude that (1)

Lehmkuhl's sentence was not the functional equivalent of a life without parole sentence, and (2) the district court properly considered his youth and other mitigating circumstances, we affirm.

## I. Background

¶ 2 In October 2001, Lehmkuhl, who was then seventeen years old, broke into a house where three high school girls were staying. While brandishing a gun, he bound the girls' hands with duct tape, put a blanket over their heads, and rummaged around the house, before taking one of the girls out of the house and placing her in the trunk of a car. After driving the car for some distance, he stopped, took her out of the trunk, disrobed her, and sexually assaulted her in the backseat of the car. Afterwards, he removed her from the car, partially cut the duct tape on her wrists, left her clothes in a pile on the ground, and drove off.

¶ 3 For his actions, Lehmkuhl was prosecuted as an adult and was ultimately convicted of two counts of first degree burglary, three counts of menacing, one count of motor vehicle theft, and one count of sexual assault. After a series of postconviction motions, he was sentenced to consecutive terms totaling 76 years to life imprisonment. His convictions and his ultimate aggregate sentence were upheld on appeal by divisions of this court. *People v. Lehmkuhl*, (Colo. App. No. 06CA2507, 2008 WL 256406, Jan. 31, 2008) (not published pursuant to C.A.R. 35(f)); *People v. Lehmkuhl*, 117 P.3d 98 (Colo.App. 2004).

¶ 4 Thereafter, Lehmkuhl filed a number of Crim. P. 35 motions for postconviction relief. In his latest motion, he asserted that, in violation of *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L.Ed.2d 825 (2010), he had been impermissibly sentenced to de facto life imprisonment without parole for crimes committed as a juvenile. (He also asserted that his trial counsel had been ineffective, but he has not reasserted that claim on appeal, and, thus, he has abandoned it. *See People v. Brooks*, 250 P.3d 771, 772 (Colo. App.2010).)

¶ 5 The district court denied Lehmkuhl's request for relief, reasoning:

The majority opinion in *Graham* categorically rules out the imposition of sentences to prison for life, without parole, upon juvenile offenders. To be sure, Mr. Lehmkuhl's sentence is not of that nature. However, he argues that his sentence is, in effect, life without parole, in light of his belief that he will not be given a "meaningful opportunity to obtain release." According to the Department of Corrections Inmate Locator, Mr. Lehmkuhl's current parole eligibility date is May 15, 2050, at which point he will be just under 67 years of age. Statistically, his life expectancy is 78.2 years. *See* § 13–25–103[, C.R.S 2012]. Thus, while Mr. Lehmkuhl would likely be close to the end of his life if paroled at his earliest eligibility date, that date is not past his life expectancy. Here, the Defendant is not guaranteed eventual release, but Colorado has provided a realistic opportunity to obtain release before the end of his life, and Defendant has not shown otherwise.

(Additional citations omitted.)

¶ 6 Lehmkuhl now appeals.

## II. Meaningful Opportunity for Parole

¶ 7 Lehmkuhl first contends that his sentences constitute unconstitutional cruel and unusual punishment because they do not provide him with a meaningful opportunity of being paroled within his lifetime. We are not persuaded.

¶ 8 In *Graham*, the United States Supreme Court reaffirmed that for purposes of sentencing, juvenile offenders are different from adult offenders because (1) juveniles have " 'a lack of maturity and an underdeveloped sense of responsibility' "; (2) they " 'are more vulnerable or susceptible to negative influences and outside pressures' "; and (3) their characters "are 'not as well formed.' " 560 U.S. at 68, 130 S.Ct. at 2026 (quoting *Roper v. Simmons*, 543 U.S. 551, 569–70, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)).

¶ 9 Because of these differences, the Court in *Graham* held that the Eighth Amendment categorically prohibits sentencing a juvenile convicted of a nonhomicide crime to life imprisonment without the possibility of parole.

*Id.* at 74–75, 130 S.Ct. at 2030. As the Court explained, "A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants ... *some meaningful opportunity to obtain release* based on demonstrated maturity and rehabilitation." *Id.* (emphasis added). *See also Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012) (extending *Graham* to mandatory sentences of life imprisonment without parole for juvenile homicide offenders).

¶ 10 In *People v. Rainer,* 2013 COA 51, ¶ 21, —— P.3d ——, 2013 WL 1490107, a division of this court recently concluded that "the rule announced in *Graham* is a new substantive rule that should be applied retroactively to all cases involving juvenile offenders under the age of eighteen at the time of the offense, including those cases on collateral review." In *Rainer,* the defendant had received an aggregate sentence of 112 years imprisonment for two counts of attempted first degree murder, two counts of first degree assault, one count of first degree burglary, and one count of aggravated robbery, all committed in a single criminal episode when he was seventeen years old. *Id.* at ¶¶ 2–3, 10. Despite having a life expectancy measured under Centers for Disease Control (CDC) tables of between 63.8 and 72 years of age, he would not have been eligible for parole until he was 75 years old. *Id.* at ¶ 36. On these facts, the division held that because the defendant's aggregate sentence did not offer him a meaningful opportunity to obtain release before the end of his expected life span, his sentence was the functional equivalent of a life without parole sentence and, thus, was unconstitutional under *Graham. Id.* at ¶¶ 38, 66; *see also People v. Caballero,* 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291, 295 (2012) (striking down a juvenile's life sentence where he would not become eligible for parole for 110 years).

¶ 11 Notably, in reaching its conclusion, the *Rainer* division rejected the applicability of *Close v. People,* 48 P.3d 528, 540 (Colo. 2002), in which our supreme court determined that an abbreviated proportionality review must consider each separate sentence rather than the aggregate term of multiple sentences. *Rainer,* ¶ 68. According to the *Rainer* division, *Graham*'s categorical proportionality analysis for nonhomicide juvenile offenders "effectively overruled *Close*" with respect to this particular class of defendants. *Id.*

¶ 12 In *People v. Lucero,* 2013 COA 53, ¶ 2, —— P.3d ——, 2013 WL 1459477, decided the same day as *Rainer,* a different division addressed a cruel and unusual punishment contention made by a defendant who had received consecutive sentences totaling 84 years imprisonment for conspiracy to commit first degree murder, attempted first degree murder, and two counts of second degree assault, all committed when he was fifteen years old. Because the defendant in that case would be eligible for parole when he was 57 years old and his life expectancy was 75 years, however, the division held that he had a meaningful opportunity for release during his lifetime. *Lucero,* ¶¶ 12–13; *see also Angel v. Commonwealth,* 281 Va. 248, 704 S.E.2d 386, 402 (2011) (affirming a juvenile's life sentence where the statutory scheme provided for conditional release at age sixty); *Thomas v. State,* 78 So.3d 644, 646 (Fla.Dist. Ct.App.2011) (finding no de facto life without parole sentence where, if the defendant served his entire sentence, he would be released from prison in his late sixties).

¶ 13 Here, the record indicates that Lehmkuhl will become eligible for parole in 2050, when he is 67 years old. Moreover, as the district court found, under section 13–25–103, C.R.S 2012, Lehmkuhl's life expectancy is 78.2 years. Using these figures, Lehmkuhl would have a meaningful opportunity for release during his natural lifetime because his life expectancy exceeds, by 11.2 years, his date of parole eligibility.

¶ 14 Contrary to Lehmkuhl's assertion on appeal, we perceive no error in the district court's use of section 13–25–103's mortality table. Section 13–25–103 is not, as Lehmkuhl argues, applicable only to civil cases. *See* § 13–25–102, C.R.S. 2012 ("In all civil actions, special proceedings, *or other modes of litigation* in courts of justice or before magistrates or other persons having power and authority to receive evidence, *when it is*

*necessary to establish the expectancy of continued life of any person* from any period of such person's life, . . . the table set out in section 13–25–103 shall be received as evidence, together with other evidence as to health, constitution, habits, and occupation of such person of such expectancy.") (emphasis added). Indeed, our supreme court and divisions of this court have applied the statutory mortality table in criminal cases. *See, e.g., Juarez v. People*, 855 P.2d 818, 820 n. 6 (Colo.1993); *People v. Mershon*, 844 P.2d 1240, 1248 (Colo.App.1992), *aff'd in part and rev'd in part*, 874 P.2d 1025 (Colo.1994).

¶ 15 Notwithstanding the foregoing, Lehmkuhl would have us use CDC tables, as the division in *Rainer* did, rather than the statutory mortality table on which the district court relied here. Using the CDC tables, however, would not alter the result in this case because even under those tables, Lehmkuhl would be eligible for parole within his expected lifetime, which he claims would be 70.7 years under the CDC tables. *See* Centers for Disease Control, *Health, United States*, 2010, *available at* http://www.cdc.gov/nchs/data/hus/hus10.pdf#022.

¶ 16 Lehmkuhl has cited no post-*Graham* decision, nor have we found one, that has determined that a sentence affording a defendant a chance to be paroled within his natural lifetime violates *Graham*'s requirement that defendants be given a meaningful opportunity to obtain release. Nor has Lehmkuhl cited any case that has interpreted *Graham* as requiring a certain interval of time between a defendant's parole eligibility date and his or her life expectancy.

¶ 17 For these reasons, and consistent with *Rainer, Lucero*, and the other authorities cited above, we conclude that Lehmkuhl's aggregate sentence is not invalid as a de facto life sentence without the possibility of parole.

¶ 18 We are not persuaded otherwise by Lehmkuhl's perfunctory assertion that his life expectancy is actually shorter than that indicated by the CDC tables because "[i]t can be assumed that the life expectancy of a person incarcerated is lower than that of the general population." Lehmkuhl cites no evidence or legal authority in support of such an assertion, although elsewhere in his opening brief, he cites *People v. J.I.A.*, 196 Cal. App.4th 393, 127 Cal.Rptr.3d 141, 149 (2011), *vacated*, ⸺ Cal.4th ⸺, 148 Cal.Rptr.3d 499, 287 P.3d 70 (2012), which made such a point. Even were we to rely on such authority, however, it provides no basis on which we could conclude, without speculation, that Lehmkuhl would not be eligible for parole until after his life expectancy.

¶ 19 Nor are we persuaded by Lehmkuhl's assertion that it is extremely unlikely that he will be paroled when he first becomes eligible for parole because of (1) present parole board practices and (2) the present backlog of treatment for sex offenders. These facts were not cited (or mentioned in any way) in Lehmkuhl's motion and supplemental motion in the district court. *See People v. Ray*, 2012 COA 32, ¶ 14, 302 P.3d 289 ("C.A.R. 10 does not allow a party to add information that counsel failed to develop (or otherwise make available) in the trial court."). Moreover, it is speculative to assume that parole or sex offender treatment practices will be in 2050 what they may be today. And although Lehmkuhl repeatedly asserted in oral argument that he was entitled to an evidentiary hearing to develop such evidence, he never alerted the district court that he believed such factual development was needed. Nor did he request in his appellate briefs in this court that we remand for an evidentiary hearing as to such issues (he only sought an evidentiary hearing as to the age and other mitigating factors discussed below).

¶ 20 Accordingly, we conclude that Lehmkuhl's sentence was not a de facto life without parole sentence. Therefore, we reject his assertion that his aggregate sentences were unconstitutional under *Graham* and its progeny.

### III. Age and Other Mitigating Factors

¶ 21 Lehmkuhl next contends that in sentencing him, the district court did not properly consider his age and other mitigating factors. The record shows otherwise.

¶ 22 As an initial matter, we note that challenges to the propriety of a sentence for a felony ordinarily must be brought on direct

appeal. *See* § 18–1–409(2), C.R.S. 2012; *People v. Boespflug,* 107 P.3d 1118, 1120 (Colo.App.2004). To the extent, however, that *Graham* and its progeny can be said to have "constitutionalized" the factor of "youth" by recognizing its relevance for Eighth Amendment cruel and unusual punishment purposes, *see Graham,* 560 U.S. at 75–76, 130 S. Ct. at 2031 (noting that criminal procedure laws that fail to take defendants' youthfulness into account would be flawed), the record here reflects that the district court, in fact, considered Lehmkuhl's youth, as well as several other mitigating factors. Indeed, on three separate occasions, the district court recognized Lehmkuhl's age, lack of a criminal record, and reputation in the community as mitigating circumstances. Thus, the record shows that the court afforded Lehmkuhl the individualized sentencing determination to which he claims he was entitled.

¶ 23 We are not persuaded otherwise by Lehmkuhl's assertion that the court should have made greater inquiry into his maturity level, his home and school environments, whether he had been sexually or physically abused, and whether he abused alcohol or drugs. We perceive nothing in the applicable case law that requires a district court to make sua sponte inquiries into such subjects.

¶ 24 Accordingly, we conclude that the district court properly considered Lehmkuhl's youth and other mitigating circumstances in imposing the sentences at issue here.

### IV. Conclusion

¶ 25 For these reasons, the order is affirmed.

JUDGE BERNARD concurs.

JUDGE DAILEY specially concurs.

JUDGE DAILEY specially concurring.

¶ 26 I agree with the result reached by the majority in this case. But, unlike my colleagues, I would not apply *Graham* to cases where, as here, a juvenile has received a number of consecutive, individual sentences

that, when accumulated, result in a lengthy aggregate term of imprisonment.

¶ 27 Initially, I observe that the division in *People v. Rainer,* 2013 COA 51, ── P.3d ──, and the majority here disavow the traditional manner of evaluating the proportionality of consecutive sentences. In *Close v. People,* 48 P.3d 528 (Colo.2002), the supreme court held that, for cruel and unusual punishment purposes, sentences should be assessed individually, rather in their aggregate form. *Id.* at 540. The division in *Rainer* and the majority here, however, reject this type of analysis in cases involving juvenile offenders because, they say, *Graham* has effectively overruled *Close* with respect to juvenile offenders.

¶ 28 They reach this conclusion, however, not based on the actual holding in *Graham*—namely, that a single sentence of life without parole for a single nonhomicide crime was unconstitutional—but based on the "expansive" or "broad" language or reasoning of *Graham. See Rainer,* ¶¶ 71–72.

¶ 29 I would not consider *Close* to have been effectively overruled in juvenile cases based on "expansive" language or reasoning in *Graham,* particularly when there is a split of authority on the subject, *see Bunch v. Smith,* 685 F.3d 546, 553 (6th Cir.2012), with a number of courts applying a *Close,* rather than *Graham,* type of analysis in this very situation. *See State v. Kasic,* 228 Ariz. 228, 265 P.3d 410, 415–16 (2011) (recognizing that the proper analysis focuses on the sentence imposed for each specific crime, not the cumulative sentence, even if a defendant faces a total sentence exceeding a normal life expectancy as a result of consecutive sentences; and affirming, as not unconstitutional under *Graham,* concurrent and consecutive prison terms totaling 139.75 years for a nonhomicide juvenile offender); *see also Henry v. State,* 82 So.3d 1084, 1089 (Fla.Dist.Ct.App.2012) (holding that a nonhomicide child offender's aggregate 90–year sentence is not unconstitutional); *Walle v. State,* 99 So.3d 967, 972–73 (Fla.Dist.Ct.App.2012) (refusing to extend *Graham* to aggregate sentences totaling 92 years on reasoning that *Graham* applies only to single sentences).[1]

---

1. We should, wherever possible, avoid declaring     a supreme court decision to have been overruled:

¶ 30 Indeed, I, like these courts, would reject *Graham*'s applicability to so-called de facto life sentence situations. In *Henry v. State*, 82 So.3d 1084, a Florida appellate court acknowledged that

> [t]here is language in the *Graham* majority opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is "life" or 107 years.

*Id.* at 1089. But, the court also said:

> If ... under the notion that a term-of-years sentence can be a *de facto* life sentence that violates the limitations of the Eighth Amendment, *Graham* offers no direction whatsoever. At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty, some lesser or greater number?
>
> Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter? ... Without any tools to work with, however, we can only apply *Graham* as it is written. If the Supreme Court has more in mind, it will have to say what that is.

*Id.* (footnote omitted).

¶ 31 As should be evident, the existence of so many variables could affect (perhaps, in an unequal manner) *Graham*'s application to juveniles who receive multiple consecutive sentences resulting in lengthy terms of incarceration. And to this list of variables, I would add a couple more:

- What life expectancy tables should be used in forecasting the prospect of a juvenile's becoming eligible for parole before he or she dies? As this case demonstrates, there is variation in the tables. And, given that variation, a sen-

tence for a juvenile could be determined to be constitutional or unconstitutional depending on which table was used.

- What if the juvenile has a health issue dramatically reducing his or her life expectancy? Is the juvenile's sentence to be reduced, so as to make him or her eligible for parole before his or her reduced life expectancy expires, *regardless* of the nature or number of crimes committed or the number of different jurisdictions in which crimes were committed?

¶ 32 For these reasons, I would limit *Graham*'s application to its facts: a single sentence of life without parole for a nonhomicide offense. *Cf. Guzman v. State*, 110 So.3d 480, 481 (Fla.Dist.Ct.App.2013) (refusing to extend *Graham* to single 60–year sentence for juvenile). Because no such sentence was imposed upon defendant, I would affirm, on grounds different from the majority, the district court's order denying defendant's request for relief.

---

"If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989).