2014 COA 109

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Giselle GUTIERREZ–RUIZ,**
**Defendant–Appellant.**

**Court of Appeals No. 11 CA0511**

Colorado Court of Appeals,
Div. VI.

Announced August 28, 2014

Rehearing Denied November 6, 2014

Adams County District Court No. 97CR3018, Honorable F. Michael Goodbee, Judge

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Ashley Ratliff Attorney at Law, LLC, Ashley Ratliff, Denver, Colorado; Samler and Whitson, PC, Eric Samler, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE BOORAS

¶ 1 Defendant, Giselle Gutierrez–Ruiz, appeals the trial court's order summarily denying his Crim. P. 35(c) motion challenging his conviction and sentence to life imprisonment without the possibility of parole. We affirm the order except insofar as it rejects defendant's challenge to the constitutionality of his life sentence, vacate that sentence, and remand for resentencing.

## I. Background

¶ 2 While defendant was driving a car, his passenger, the co-defendant, shot from the car at a truck, wounding the driver. The co-defendant later shot at another car, killing the driver. Defendant was a juvenile at the time of his arrest. A jury convicted defendant of first degree murder after deliberation and first degree assault with a deadly weapon. The trial court sentenced defendant to life without parole on the murder count and to ten years and one day on the assault count. The court denied defendant's motion for a new trial.

¶ 3 Defendant challenged his conviction on direct appeal, and a division of this court affirmed. *People v. Gutierrez–Ruiz,* (Colo. App. No. 99CA1 149, Feb. 22, 2001) (not published pursuant to C.A.R. 35(f)) (*Gutierrez–Ruiz I* ). The Colorado Supreme Court denied certiorari review on August 21, 2001. Defendant did not file a petition for certiorari with the United States Supreme Court.

¶ 4 In November 2006, defendant filed a pro se motion for postconviction relief (the first postconviction motion).[1] The trial court denied the motion.

¶ 5 In August 2009, defendant filed an action in federal district court under 28 U.S.C. section 2254 (2006). The district court dismissed the petition as barred by the one-year limitations period governing section 2254 petitions. *Gutierrez–Ruiz v. Trani,* No. Civ. A. 09–CV02026BNB, 2009 WL 4015587 (D.Colo. Nov. 19, 2009) (unpublished order). The district court denied defendant's application for a certificate of appealability, *Gutierrez–Ruiz v. Trani,* No. Civ. A. 09–CV–02026TLW, 2010 WL 174802 (D.Colo. Jan. 12, 2010) (unpublished order), and defendant appealed. The Tenth Circuit Court of Appeals denied defendant's request for a certificate of appealability and dismissed the appeal. *Gutierrez–Ruiz v. Trani,* 378 Fed. Appx. 797 (10th Cir.2010) (unpublished order).

---

1. Defendant's postconviction motion was titled a Crim. P. 35(c) motion.

¶ 6 Thereafter, in November 2010, defendant filed his second pro se Crim. P. 35(c) motion, alleging that (1) trial counsel was ineffective for failing to challenge the propriety of the complicity instruction; (2) trial counsel was ineffective for failing to discover before trial that defendant's brother had a pending felony drug charge at the time of his police interrogation; (3) appellate counsel was ineffective for failing to advise him of the one-year limitation period for filing a section 2254 petition; and (4) his life sentence without the possibility of parole was unconstitutional under *Graham v. Florida*, 560 U.S. 48, 74, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

¶ 7 The trial court denied three of the issues without a hearing, concluding that the two ineffective assistance of trial counsel claims were barred by Crim. P. 35(c)(3)(VI), because the issues had been raised and resolved in the direct appeal, *see Gutierrez–Ruiz I*; and that defendant's life sentence without the possibility of parole was not unconstitutional under *Graham* because *Graham* applied only to nonhomicide crimes committed by juveniles, and that even if *Graham* applied, defendant "could clearly 'foresee that a life' would be taken by virtue of the passenger's conduct and his complicity thereto."

¶ 8 The court appointed postconviction counsel to investigate defendant's allegation that appellate counsel was ineffective for failing to advise him of the one-year limitation period for filing a section 2254 petition. Postconviction counsel filed a supplemental Crim. P. 35(c) motion, acknowledging that Colorado case law establishes that there is no "constitutionally mandated standard that appellate counsel must advise an appellant of other postconviction options, either of the state or federal variety," and requesting that the trial court vacate and then reinstate defendant's sentence, thereby restoring defendant's right to seek relief under section 2254. The trial court denied the claim, ruling that there was no constitutionally mandated requirement that appellate counsel advise a defendant about the time limitation for filing a section 2254 petition.

¶ 9 This appeal followed.

## II. Standard of Review

¶ 10 We review the trial court's summary denial of a motion for postconviction relief de novo. *People v. Gardner*, 250 P.3d 1262, 1266 (Colo.App.2010). "A Crim. P. 35(c) motion may be denied without a hearing if the motion, files, and record clearly establish that the defendant is not entitled to relief." *People v. Venzor*, 121 P.3d 260, 262 (Colo.App.2005). "Summary denial of a postconviction relief motion is also appropriate if ... the allegations, even if true, do not provide a basis for relief." *Id.*

## III. Ineffective Assistance of Counsel

¶ 11 Defendant raises a number of claims of ineffective assistance of trial and appellate counsel. We conclude that the claims alleging ineffective assistance of trial counsel are procedurally barred and that the claim alleging ineffective assistance of appellate counsel does not warrant relief.

### A. Ineffective Assistance of Trial Counsel

¶ 12 Defendant contends that trial counsel's performance was ineffective because counsel (1) failed to challenge the propriety of the complicity instruction set forth in *Bogdanov v. People*, 941 P.2d 247 (Colo. 1997), *overruled on other grounds by Griego v. People*, 19 P.3d 1 (Colo.2001); (2) failed to discover before trial that defendant's brother had a pending felony drug charge; and (3) had a conflict of interest. Because defendant could have presented these claims in his first postconviction motion but did not, the trial court was required to deny them under Crim. P. 35(c)(3)(VII). *See Dunlap v. People*, 173 P.3d 1054, 1062 n. 4 (Colo.2007) ("The current version of Crim. P. 35(c) requires that the court, with a few exceptions, dismiss 'any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought ....' "); *see also People v. Vondra*, 240 P.3d 493, 494 (Colo.App.2010) (applying Crim. P. 35(c)(3)(VII) on appeal to preclude successive claim although postconviction court did not rely on that provision).

¶ 13 Defendant's claim that trial counsel's performance constituted ineffective assis-

tance based on a conflict of interest is also barred because that claim was not raised in the current postconviction motion. *See People v. Goldman,* 923 P.2d 374, 375 (Colo.App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

### B. Ineffective Assistance of Appellate Counsel

■ ¶ 14 We are not persuaded by defendant's contention that appellate counsel was ineffective for failing to advise him of the one-year limitation period for filing a section 2254 petition.[2]

¶ 15 To prove an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was deficient—that is, it fell below an objective standard of reasonableness—and that the deficient performance prejudiced the defense. *See Ardolino v. People,* 69 P.3d 73, 76 (Colo.2003). "Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard." *People v. Karpierz,* 165 P.3d 753, 759 (Colo.App. 2006).

¶ 16 The test for evaluating counsel's performance is whether counsel's conduct was "within the range of competence demanded of attorneys in criminal cases under prevailing professional norms." *People v. Garcia,* 815 P.2d 937, 941 (Colo.1991). In determining whether counsel's performance was deficient, "a court must be 'highly deferential' in reviewing counsel's performance and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting

*Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

¶ 17 Defendant did not cite to any authority, and we have found none, to support the proposition that appellate counsel had a duty to advise him of the time limitation for filing a section 2254 petition, even if defendant were to testify that he told appellate counsel he was interested in pursuing section 2254 relief. *See People v. Alexander,* 129 P.3d 1051, 1055–56 (Colo.App.2005) ("[W]e find no basis to conclude that there is a constitutionally mandated standard that appellate counsel must advise the defendant regarding opportunities for statutory postconviction relief or [section 2254 relief].”). We therefore conclude that the trial court properly denied this claim without a hearing. *See Venzor,* 121 P.3d at 262.

### IV. Sentencing

■ ¶ 18 Defendant asserts, the People agree, and we concur that defendant's mandatory sentence to life imprisonment without the possibility of parole is unconstitutional pursuant to *Miller v. Alabama,* 567 U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).[3]

¶ 19 We review de novo the constitutionality of a trial court's sentencing determination. *Lopez v. People,* 113 P.3d 713, 720 (Colo. 2005).

¶ 20 In *Graham,* the Supreme Court held that the Cruel and Unusual Punishments Clause of the Eighth Amendment categorically prohibits life in prison without possibility of parole for juveniles convicted of nonhomicide crimes. 560 U.S. at 74, 130 S.Ct. 2011. The Court expanded on this reasoning in *Miller,* 567 U.S. ——, 132 S.Ct. at 2469, holding that mandatory life in prison without possibility of parole for juveniles convicted of homicide crimes also violates the Eighth Amendment. The *Miller* Court held that in

---

2. Defendant could not have brought this claim in his first postconviction motion because dismissal of the 28 U.S.C. section 2254 petition did not occur until after the first postconviction motion had been initiated and denied by the trial court. *See* Crim. P. 35(c)(3)(VII)(a) (making an exception to successive claims for those that are "based on events that occurred after initiation of the defendant's prior appeal or postconviction proceeding").

3. The People have not challenged the retroactivity of *Miller v. Alabama,* 567 U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), with respect to Crim. P. 35(c) motions. Accordingly, for the purpose of this appeal, we will assume *Miller* applies retroactively.

order to sentence a juvenile to life without parole, the court must conduct an individualized sentencing determination that "take[s] into account how children are different [from adults], and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at ——, 132 S.Ct. at 2469.

■ ¶ 21 Importantly, *Miller* does not categorically bar sentencing a juvenile offender who commits first degree murder to life without parole:

> We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. . . . *Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different,* and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
>
> . . . .
>
> *Our decision does not categorically bar* a penalty for a class of offenders or type of crime—as, for example, we did in [*Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) [4]] or *Graham.*

*Id.* at ——, 132 S.Ct. at 2469, 2471 (internal citations omitted) (emphasis added).

■ ¶ 22 Instead, *Miller* holds that such a sentence is constitutionally permissible as long as the sentencing court determines it is just and appropriate in light of the defendant's age, maturity, and the other factors discussed in *Miller* :

> [*Our decision*] *mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.*
>
> . . . .
>
> *Graham, Roper,* and our individualized sentencing decisions make clear that a *judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.* By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment. We accordingly reverse the judgments . . . and *remand the cases for further proceedings not inconsistent with this opinion.*

*Id.* at ——, 132 S.Ct. at 2471, 2475 (emphasis added).

¶ 23 Applying *Miller* to the present case, it is clear that the constitutional defect in defendant's sentence for first degree murder is not its length or the fact that he will not be eligible for parole. Instead, defendant's sentence of life without parole violates the Eighth Amendment because it was imposed without any opportunity for the sentencing court to consider whether this punishment is just and appropriate in light of defendant's age, maturity, and the other factors discussed in *Miller.* Accordingly, this case must be remanded for resentencing using a process by which the trial court can conduct the individualized analysis required by *Miller* and, on that basis, make an initial determination whether life without parole is a just and appropriate sentence for defendant under all the circumstances. *See State v. Hart,* 404 S.W.3d 232, 238–39 (Mo.2013).

¶ 24 We acknowledge that the division in *People v. Banks,* 2012 COA 157, —— P.3d —— (*cert. granted* June 24, 2013), reached a different result. The *Banks* division concluded that the statutory scheme mandating life imprisonment without the possibility of parole for juvenile homicide defendants is per se unconstitutional as to all juvenile homicide defendants. The division then applied Colorado's general severability clause, codified in section 2–4–204, C.R.S.2013, to the nonparole

---

4. In *Roper v. Simmons,* 543 U.S. 551, 568, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court invalidated the death penalty for all juvenile offenders under the age of eighteen.

provisions of the sentencing statute. The division concluded that the remaining statutory framework required courts to sentence juveniles convicted of class one felonies committed after July 1, 1990, to life with the possibility of parole after forty years. *Id.* at ¶¶ 124–31.[5] Accordingly, the division "affirm[ed the] defendant's sentence as to life imprisonment but vacate[d] it to the extent he is denied the possibility of parole, and remand[ed] the case to the trial court to modify the sentence by including a provision for the possibility of parole after forty years" in accordance with section 17–22.5–104(2)(c), C.R.S.2013. *Id.* at ¶ 131. Recently, another division of this court agreed with the holding in *Banks*. *See People v. Valles*, 2013 COA 84, ¶ 74, —— P.3d ——.[6]

¶ 25 We disagree with *Banks* only to the extent that it severed the unconstitutional provisions before the trial court held an individualized sentencing analysis pursuant to *Miller* to determine if life imprisonment without parole was an appropriate sentence for the juvenile defendant. In so holding, we conclude that the sentencing scheme is not per se unconstitutional as to all juvenile defendants, because some juveniles may be sentenced to life imprisonment without parole after an individualized sentencing proceeding, in compliance with *Miller*. Rather, the sentencing scheme is unconstitutional as applied to only those juvenile defendants who the court determines, after an individualized sentencing hearing, should not be sentenced to life imprisonment without parole.

¶ 26 Accordingly, if, on remand, the trial court determines that life without parole is a just and appropriate sentence for defendant under all the circumstances, that sentence is constitutional under *Miller*. If, however, the trial court determines that defendant should not be sentenced to life without parole, the statutory scheme mandating such sentence would be unconstitutional as applied to defendant, because there would be no other statutorily authorized sentence that the court could impose. It is at this juncture that the nonparole provisions contained in sections 18–1.3–401(4)(a), C.R.S.2013, and 17–22.5–104(2)(d)(I) could be severed, as discussed in *Banks*.

¶ 27 We agree with *Banks'* ultimate conclusion that the unconstitutional provisions are severable under section 2–4–204 and that life imprisonment with the possibility of parole in forty years is a statutorily authorized penalty for juvenile homicide defendants. As stated above, however, we disagree that it is the *only* statutorily authorized penalty for juvenile homicide defendants; thus, we decline to follow the sentencing modification crafted in *Banks*. In sum, after the trial court has conducted an individualized sentencing analysis, the court has two sentencing options under the current statutory sentencing scheme: life imprisonment without the possibility of parole or life imprisonment with the possibility of parole in forty years.

¶ 28 We recognize that, because no sentence is per se constitutional, *see People v. Borghesi*, 66 P.3d 93, 101–02 (Colo.2003), if defendant is sentenced to life imprisonment with the possibility of parole after forty years, defendant is not restricted from arguing that such a sentence violates the Eighth Amendment. *See People v. Deroulet*, 48 P.3d 520, 527 (Colo.2002) (even though a sentence imposed is the minimum under the statute, the sentencing court must still conduct an abbreviated proportionality review); *Close v. People*, 48 P.3d 528, 540 (Colo.2002) (same). However, because courts must grant substantial deference to the broad authority of the General Assembly to determine punishments for crimes, "'a successful challenge to the proportionality of a particular sentence is exceedingly rare.'" *People v. Hargrove*, 2013 COA 165, ¶ 10, 338 P.3d 413, 416 (quoting *People v. Gonyea*, 195 P.3d 1171, 1175–76 (Colo.App.2008)).

### V. Conclusion

¶ 29 The order is affirmed except insofar as it denied defendant's challenge to the con-

---

5. The division in *People v. Banks*, 2012 COA 157, —— P.3d —— (*cert. granted* June 24, 2013), did not discuss the requirement of an individualized sentencing proceeding under *Miller*.

6. To the extent the issue of individualized sentencing was raised in *People v. Valles*, 2013 COA 84, —— P.3d ——, the division elected not to address it and instead followed the remedy set forth in *Banks*.

stitutionality of his sentence to life imprisonment without the possibility of parole. That sentence is vacated, and the case is remanded for resentencing in accordance with this opinion.

JUDGE ROMÁN and JUDGE VOGT *, concur.