Opinion by JUDGE RICHMAN
¶ 1 Defendant, Terrance Wilder, stands convicted of first degree murder after deliberation (Count 1), second degree murder (Count 2), attempted first degree murder (Count 3), and conspiracy to commit first degree murder (Count 4). He appeals the trial court's order denying his motions for postconviction relief seeking resentencing on all convictions. We conclude that defendant's sentence on Count 1 must be vacated, and the case remanded for resentencing on that count consistent with the decision in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). We do not reach his claim for resentencing on the other counts.
I. Background
¶ 2 In 1998, at the age of seventeen, defendant conspired to murder his codefendant's husband and landlord. Defendant and his codefendant invited the two men to the house they were renting from the landlord. The husband did not arrive, but the landlord arrived with a friend. After an argument, the codefendant shot both the landlord and his friend several times. Defendant and his codefendant then left the house. The landlord's friend died from the gunshot wounds. The landlord, however, did not die immediately. The landlord crawled into the house, where he was discovered by another person who notified defendant that the landlord was still alive. Defendant returned to the house and killed the landlord by repeatedly bludgeoning his head with a baseball bat.
¶ 3 Defendant was convicted by a jury of first degree murder as to the landlord (a class 1 felony), second degree murder as to the landlord's friend (a class 2 felony), attempted murder and conspiracy to commit murder as to the husband (both class 2 felonies), and being an accessory to a class 1 or class 2 felony. In special interrogatories, a jury also found the presence of two sentencing aggravators: that defendant or his codefendant (1) possessed, used, or threatened use of a deadly weapon; and (2) caused the death or serious bodily injury of a person.
¶ 4 The trial court sentenced defendant to life without the possibility of parole on the class 1 felony, according to the mandatory sentencing statute in place at the time. In imposing the sentence, the judge emphasized the mandatory nature of the sentence, stating that the "charge of murder in the first *688 degree requires that the Court impose a sentence that is required by law of life in prison without possibility of parole." It sentenced defendant to serve forty-eight-year terms for the three class 2 felonies, consecutive to the life sentence and to one another.[1] Defendant was sentenced to serve twelve years for the accessory count, concurrent to the other sentences.
¶ 5 Following a direct appeal, a division of this court reversed defendant's accessory conviction and affirmed his remaining convictions. People v. Wilder, (Colo. App. No. 99CA1479, Aug. 16, 2001) (not published pursuant to C.A.R. 35(f) ) (Wilder I ).
¶ 6 Defendant then filed a pro se Crim. P. 35(c) motion, alleging that his convictions were unconstitutional because the trial court did not properly advise him of the right to testify, and that his trial counsel was ineffective for not objecting to the trial court's inadequate advisement. The postconviction court denied the motion in a summary order, and a division of this court affirmed the order on appeal. People v. Wilder, 2008 WL 2536265 (Colo. App. No. 05CA2064, June 26, 2008) (not published pursuant to C.A.R. 35(f) ) ( Wilder II ).
¶ 7 In 2011, defendant filed a second pro se Crim. P. 35(c) motion in which he asserted that his sentence to life without parole for the class 1 felony was unconstitutional under the Eighth Amendment and disproportionate given his juvenile status at the time he committed the crime. Defendant cited both case law and psychological literature indicating that juveniles are different from adults, and asserted that this difference must be considered when sentencing juvenile offenders. Defendant was appointed postconviction counsel, who supplemented defendant's motion with a Crim. P. 35(b) motion in which he argued for a reduction of sentence based on good behavior while incarcerated and stated that defendant was willing to comply with any conditions imposed by the court.
¶ 8 The postconviction court denied both motions without a hearing. In its written order, the postconviction court noted that the United States Supreme Court was then considering this issue, and invited defendant to file a second motion within ninety days of the announcement of any decision by the Supreme Court if it decided the issue differently. Defendant did not file any further motions. This appeal followed.
II. Constitutionality of Defendant's Sentence
¶ 9 On appeal, defendant asserts that (1) his mandatory sentence to life without the possibility of parole for the first degree murder conviction is unconstitutional and (2) the aggregate of his remaining convictions results in an unconstitutional de facto sentence to life without parole. We agree that defendant's mandatory sentence to life without parole is unconstitutional and must be vacated, but decline to reach his second contention.
A. Mandatory Life Sentence Without the Possibility of Parole
1. Preservation and Standard of Review
¶ 10 "The summary denial of a Crim. P. 35(c) motion for postconviction relief without a hearing presents a question of law we review de novo." People v. Rainer, 2013 COA 51, ¶ 15, 412 P.3d 520 (cert. granted Dec. 22, 2014). We also review de novo "the constitutionality of a trial court's sentencing determination." People v. Gutierrez-Ruiz, 2014 COA 109, ¶ 19, 383 P.3d 44.
¶ 11 A court's review of a Crim. P. 35(b) motion focuses on the fairness of the sentence in light of the purposes of the sentencing laws. A decision to reduce a sentence based on a Crim. P. 35(b) motion generally remains within the sound discretion of the trial court. People v. Dunlap, 36 P.3d 778, 780 (Colo. 2001).
¶ 12 The People concede that the Supreme Court's decision in Miller applies retroactively to defendant's sentence and that defendant *689 properly preserved for appellate review his challenge to the mandatory life without parole sentence. For purposes of this case, the majority accepts the People's concession as to the retroactive application of Miller .
2. Legal Principles
a. United States Supreme Court Case Law
¶ 13 "The Eighth Amendment's prohibition of cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions. That right, we have explained, flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." Miller, 567 U.S. at 469, 132 S.Ct. at 2463 (citation and internal quotation marks omitted). In the spirit of this proportionality requirement, the Supreme Court has decided a series of cases based on the idea that "children are constitutionally different from adults for purposes of [criminal] sentencing." Id. at 471, 132 S.Ct. at 2464.
¶ 14 First, in Roper v. Simmons, 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Court held that the "Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."
¶ 15 Next, in Graham v. Florida, 560 U.S. 48, 74, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Supreme Court held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." In establishing this categorical ban, the Court recognized that juvenile offenders are less culpable than their adult counterparts due to their lack of maturity, underdeveloped sense of responsibility, increased vulnerability and susceptibility to negative influences and peer pressure, and less well-formed personal characteristics. Id. at 68, 130 S.Ct. 2011 (citing Roper, 543 U.S. at 569, 125 S.Ct. 1183 ). The Court stated: "An offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." Id. at 76, 130 S.Ct. 2011.
¶ 16 However, the Court in Graham also noted that "[j]uvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide." Id. at 63, 130 S.Ct. 2011. The Court explicitly limited its holding in Graham to juvenile offenders who committed solely nonhomicide offenses. Id.
¶ 17 In Miller, the Court expanded on its reasoning in Graham, citing the Court's history of adopting "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." 567 U.S. at 470, 132 S.Ct. at 2463. The Court stated that " Graham 's reasoning implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses." Id. at 473, 132 S.Ct. at 2465. Employing an analysis similar to that in Graham, the Court held that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," including those convicted of homicide crimes. Id. at 479, 132 S.Ct. at 2469 (emphasis added). The Court again recognized that juveniles are different from adults, and held that "[s]uch a [mandatory] scheme prevents those meting out punishment from considering a juvenile's 'lessened culpability' and greater 'capacity for change.' " Id. at 465, 132 S.Ct. at 2460 (quoting Graham , 560 U.S. at 68, 74, 130 S.Ct. 2011 ). The Court stressed that its prior cases have required "individualized sentencing for defendants facing the most serious penalties." Id . at 465, 132 S.Ct. at 2460.
¶ 18 The Court again emphasized the dangers of mandatory sentencing as applied to juvenile offenders, noting the potential unfairness of imposing the same harsh penalty on younger and older juveniles, "the shooter and the accomplice, the child from a stable household and the child from a chaotic and abusive one." Id . at 477, 132 S.Ct. at 2467-68. The Court explained how a scheme imposing mandatory life without parole, especially on juveniles convicted of the most serious crimes, precludes consideration of the offender's "chronological age and its hallmark *690 features-among them, immaturity, impetuosity, and failure to appreciate risks and consequences." Id . at 477, 132 S.Ct. at 2468. Finally, the Court noted that imposition of a sentence to mandatory life without parole negates the possibility of rehabilitation, even in those cases where the circumstances most strongly indicate its likelihood. Id .
¶ 19 Yet the Court also endeavored to clarify that its new rule merely prohibited the mandatory imposition of life without parole on juvenile offenders. Id . at 480, 132 S.Ct. at 2469 ("Although we do not foreclose a sentencer's ability to make [a determination that the juvenile's crime reflects irreparable corruption] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."). The Court further cautioned that "we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." Id. The Court ultimately concluded:
Graham, Roper , and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, [sentencing schemes imposing mandatory life without parole for juvenile offenders] violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.
Id . at 489, 132 S.Ct. at 2475.
b. Colorado Cases
¶ 20 Several divisions of this court have analyzed Miller 's effect on Colorado's current sentencing framework for juveniles convicted of class 1 felonies. The applicable sentencing statute, section 18-1.3-401(1)(a)(V)(A), C.R.S. 2014,[2] divides felonies into six classes and prescribes legislatively imposed guidelines for trial judges to follow when sentencing. For class 1 felonies, the minimum sentence is life imprisonment. However, the statute then separates "life imprisonment" into different categories depending on the date the crime was committed.
¶ 21 Before 2006, "life imprisonment" was divided into two categories. § 18-1.3-401(4)(a). Those people who committed crimes between July 1, 1985, and July 1, 1990, would be sentenced to life with the possibility of parole after forty calendar years. But those, like defendant, who committed crimes on or after July 1, 1990, would be sentenced to life imprisonment without the possibility of parole.
¶ 22 In 2006, the legislature amended the statute to add sections 18-1.3-401(4)(b)(I) and (II), which created a third category of life imprisonment. See Ch. 228, sec. 2, § 18-1.3-401, 2006 Colo. Sess. Laws 1052. This category applies exclusively to juveniles who were convicted and sentenced as adults for crimes committed on or after July 1, 2006. The legislature imposed mandatory life imprisonment with the possibility of parole after forty years on this group of offenders.
¶ 23 We perceive three approaches that have developed in Colorado for interpreting and applying these statutes in response to Miller .
¶ 24 In People v. Banks, 2012 COA 157, ¶ 60, 412 P.3d 417 (cert. granted June 24, 2013), a division of this court concluded that in light of Miller the provision of section 18-1.3-401(1)(a) mandating a sentence of life without the possibility of parole for class 1 felonies was unconstitutional as applied to juvenile offenders. But the Banks division also determined that the statutes relating to sentencing for offenders convicted of class 1 felonies indicated the legislature's "intent to impose the most serious penalty that is constitutionally permissible for such offenders." Id. at ¶¶ 128-29. Thus, the division, persuaded by the severability argument advanced by the People, concluded that severing the unconstitutional *691 portions of the statute left life with the possibility of parole after forty years as "the only statutorily authorized penalty" reflecting the legislature's intent to impose the most serious constitutional penalty. Id. The division stated that this result was further supported by legislative intent, as demonstrated by the 2006 amendment. Id. at ¶ 130.
¶ 25 Thus, the Banks division affirmed the defendant's sentence to life imprisonment, but vacated the sentence "to the extent [the defendant] is denied the possibility of parole" and remanded with instructions to modify the sentence to include a provision entitling the defendant to the possibility of parole after forty years. Id. at ¶ 131. Several divisions have followed the Banks approach in both published and unpublished opinions. See, e.g., People v. Valles, 2013 COA 84, ¶¶ 71-75, 412 P.3d 537.
¶ 26 A second approach adopted by a division of this court disagreed with Banks only insofar as it imposed a mandatory life sentence with parole after forty years without first requiring an individualized determination of whether life without parole would be appropriate for the particular juvenile being sentenced. Gutierrez-Ruiz, 2014 COA 109, ¶ 25, 383 P.3d 44. The division in Gutierrez-Ruiz concluded that the constitutional defect in sentencing juvenile offenders under section 18-1.3-401(4)(a) for commission of a class 1 felony
is not its length or the fact that he will not be eligible for parole. Instead, defendant's sentence of life without parole violates the Eighth Amendment because it was imposed without any opportunity for the sentencing court to consider whether this punishment is just and appropriate in light of defendant's age, maturity, and the other factors discussed in Miller .
Id . at ¶ 23.
¶ 27 The division in Gutierrez-Ruiz remanded the case with instructions to follow a two-step procedure. First, the trial court must make an individualized determination whether life without parole is appropriate for the particular juvenile. Second, if the trial court determines that life without parole is not appropriate, the court should follow the approach elucidated in Banks and impose a mandatory sentence of life with the possibility of parole after forty years.
¶ 28 Another division, in an unpublished opinion, determined that Miller did not invalidate section 18-1.3-401(1)(a)(V)(A) or (4)(a), because it did not categorically ban life without parole for juvenile homicide offenders, and the division was unpersuaded by the arguments urged by the People to either (1) sever the mandatory life without parole provision from the statute or (2) revive the previous sentencing statute from 1985. People v. Tate, 2012 WL 4010238 (Colo. App. No. 07CA2467, Sept. 13, 2012) (not published pursuant to C.A.R. 35(f) ) (cert. granted July 1, 2013). Although Tate, as an unpublished opinion, is not binding precedent, we note it here because it is part of the framework that illustrates the different approaches divisions have taken on this issue, and it is one of the cases addressing this issue to which the supreme court has granted certiorari. See also Jensen v. People, 2013 WL 6610025 (Colo. No. 13SC211, Dec. 12, 2013) (unpublished order).
3. Application
¶ 29 Here, defendant was convicted for crimes committed in 1998. Thus, the trial court sentenced him to life without the possibility of parole for the first degree murder conviction, under the mandatory provision of section 18-1.3-401(4)(a). The court stated that although it "gives me no pleasure to give you life in prison without the possibility of parole, ... that is absolutely a mandatory [sentence], because that is what the law requires."
¶ 30 To begin, we agree with the division in Gutierrez-Ruiz insofar as it held that Miller did not categorically bar the imposition of a life without parole sentence for a juvenile offender. Rather, as that division stated, Miller requires an individualized determination of whether life without parole is appropriate given the particular qualities of the juvenile being sentenced, taking into consideration the following:
• the offender's "chronological age and its hallmark features-among them, immaturity, *692 impetuosity, and failure to appreciate risks and consequences";
• "the family and home environment" of the offender;
• "the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected him [or her]"; and
• "that [he or she] might have been charged and convicted of a lesser offense if not for incompetencies associated with youth."
Miller, 567 U.S. at 477, 132 S.Ct. at 2468 ; see also Gutierrez-Ruiz, ¶¶ 23, 25.
¶ 31 Because the trial court sentenced defendant to mandatory life without the possibility of parole as was required by the law in 1999, it is clear that defendant's sentence must be vacated and his case remanded to the trial court for an individualized determination whether life without parole is an appropriate sentence. The more difficult question is how the trial court should proceed if it determines that life without parole is not appropriate for defendant's first degree murder conviction.
¶ 32 In the case before us, as in Banks, the People's severability argument proposed to sever, as applied to juveniles only, the sentence in section 18-1.3-401(4)(a) that imposed a mandatory life without parole sentence on those persons convicted of committing a class 1 felony after July 1990 and before July 2006. The People argued that doing so resulted in a statutory scheme that imposed a mandatory life sentence with the possibility of parole after forty years on all juveniles convicted of class 1 felonies after 1985, consistent with the legislative intent expressed in sections 18-1.3-401(4)(b)(I) and (II). Although this result was reached in Banks and considered in Gutierrez-Ruiz, we are not convinced by the severability analysis applied in those cases.
¶ 33 We are unaware of any case, nor did the People cite any case, that used Colorado's general severability statute, section 2-4-204, C.R.S. 2014, to render certain statutory language inapplicable as applied to a particular group of people. Using the severability statute in this manner would merely create a juvenile exception that does not exist, because the statute would remain valid in its entirety as applied to adult offenders. Further, severing the life without parole portion of the statute would go further than Miller requires since Miller did not categorically ban the imposition of a life without parole sentence on juvenile offenders.
¶ 34 The People's revival argument proposed holding the entirety of section 18-1.3-401(4)(a) unconstitutional, and reviving the previously enacted statute in its stead. The prior statute was enacted in 1985, and also imposed a mandatory sentence of life with the possibility of parole after forty years on all persons convicted of class 1 felonies. We reject this argument because section 18-1.3-401(4)(a) does not contain any repeal language and it is uncertain whether the revival doctrine applies to a statute that was not held facially unconstitutional, but rather unconstitutional only as applied to a particular group of persons. We conclude that it is inappropriate to infer current legislative intent from a statute enacted decades before Miller was decided.
¶ 35 Miller does not categorically forbid imposition of a sentence to life without parole. Thus, the language of section 18-1.3-401(4)(a) is unconstitutional only as applied to juveniles insofar as it mandates imposition of that sentence, and rendering that sentence per se unconstitutional expands Miller to an extent that neither the Supreme Court nor the Colorado legislature has yet demanded.
¶ 36 In addition, severing the final sentence in section 18-1.3401(4)(a) as applied to juveniles leaves a statute with absolutely no sentencing scheme applicable to juvenile offenders who committed class 1 felonies between July 1, 1990, and July 1, 2006. To obtain the result promulgated in Banks, we would not only have to sever the final sentence of section 18-1.3-401(4)(a), but also the words "and before July 1, 1990" from the sentence before it.
¶ 37 We acknowledge that in 2006 the legislature amended section 18-1.3-401 to impose a mandatory sentence of life with the possibility of parole after forty years on juveniles who commit a class 1 felony after July 1, 2006. However, this provision was enacted *693 before Graham, Miller, or any of the Colorado cases discussed in this opinion were issued. Thus, we cannot determine that, in the wake of the case law that has developed over the past five years, the Colorado legislature has demonstrated the intent to sentence every juvenile offender convicted of a class 1 felony to a mandatory life sentence with the possibility of parole after forty years.
¶ 38 Further, although the Banks division interpreted these statutes to indicate the "intent to impose the most serious penalty that is constitutionally permissible for such offenders," ¶ 128, we construe this statement as conflicting with the reasoning and the spirit of Roper, Graham, and Miller . Miller, in particular, stressed the potential unfairness and inappropriateness of imposing identical mandatory penalties on juveniles possessing markedly different characteristics from one another and having participated in an offense to significantly different degrees.[3] Miller, 567 U.S. at 476, 132 S.Ct. at 2467 ("Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it.").
¶ 39 We recognize that "[t]he power to define crimes and prescribe punishments is vested exclusively in the legislature," and the judiciary's duty is only to impose sentences "within the legislatively mandated limits." People v. Montgomery, 669 P.2d 1387, 1390 (Colo. 1983). However, given that the part of section 18-1.3401(4)(a) applicable to defendant, who committed a class 1 felony in 1998, is unconstitutional as applied to him, the trial court is, in effect, left with no applicable legislative sentencing guidelines to apply on remand.
¶ 40 We recognize that this is an area for legislative action, but pending legislative action, it is incumbent on us to provide our interpretation of the most appropriate remedy to implement Miller .[4] Due to our concerns with the imposition of another mandatory sentencing scheme adopted by the divisions in Banks and Gutierrez-Ruiz, we have determined to adhere to the following approach (also considered by the division in Tate ) and remand to the trial court for an individualized sentencing determination based on the factors elucidated in Miller .
¶ 41 Provided that an individualized sentencing determination is made in accordance with the factors in Miller, on remand the trial court may re-impose the life sentence without parole, or it may impose a life sentence with a possibility of parole after a specified number of years, or a sentence that it determines is appropriate for this defendant. Although an open-ended sentencing approach provides little guidance for the minimum sentence that must be imposed, in making this sentencing determination the trial court should consider (1) the presumptive range that applies to the next lowest level felony: a class 2 offense with a presumptive range of twelve to twenty-four years, plus (2) the effect on the sentence of any applicable extraordinary aggravating factors as provided in section 18-1.3-401(8).
¶ 42 In light of this conclusion, we need not separately address defendant's motion for reduction of sentence under Crim. P. 32(b).
*694 B. Sentencing for Class 2 Felonies
¶ 43 The People assert that we should not consider defendant's challenge to his remaining term-of-years sentence, contending that he failed to present this argument to the trial court. We agree.
¶ 44 In his pro se Crim. P. 35(c) motion, defendant contested only his sentence to mandatory life without parole for the first degree murder conviction. He argued that the sentence is unconstitutional and disproportionate, and that it violates the Supreme Court's assertion in Graham that juveniles must be treated differently from adults in criminal sentencing. However, defendant limited his argument to the first degree murder conviction, and did not specifically contest his sentences for the class 2 felonies. He did not assert that the consecutive sentences for the class 2 felonies resulted in the functional equivalent of a life sentence without the possibility of parole in derogation of Graham or the subsequent line of Colorado cases. See, e.g., People v. Lehmkuhl, 2013 COA 98, 369 P.3d 635 (cert. granted Dec. 22, 2014); Rainer , 2013 COA 51, 412 P.3d 520 ; People v. Lucero , 2013 COA 53, 410 P.3d 467 (cert. granted Dec. 22, 2014).
¶ 45 Defense counsel's Crim. P. 35(b) motion likewise did not raise this issue.
¶ 46 We acknowledge defendant's argument that it would serve the interests of judicial economy to consider this argument now, regardless of whether it was adequately raised below. Although we have discretion to do so, we will not do so under the circumstances presented here. The trial court did not consider the issue, indicating that it was not adequately presented in defendant's postconviction motions. Also, the record here lacks argument, evidence, and factual findings regarding life expectancy and presumed parole date that were present in the preceding cases and which we would require to fully address the issue.
¶ 47 The division in Rainer specifically noted the presence of life expectancy data in the record, ¶ 67, and the division in Lucero noted that the defendant conceded his life expectancy was seventy-five years, which presumably did not conflict with the People's life expectancy argument, ¶ 13. In Lehmkuhl, ¶ 13, the division relied on life expectancy tables provided in section 13-25-103, C.R.S. 2012.
¶ 48 In this case, however, we have no basis for determining defendant's life expectancy. Section 13-25-103 was repealed in 2014, and section 13-25-102, C.R.S. 2014, now directs courts to rely on United States census information to determine life expectancy. Although we could take judicial notice of census information, the particular table that would apply to defendant has not been identified by the parties.
¶ 49 Moreover, the parties disagree about defendant's life expectancy. Defendant argues that statistical tables do not reflect the shorter life expectancy of prison inmates. Thus, we are unable to decide this issue without a factual finding of defendant's life expectancy.
¶ 50 In addition, in Rainer and Lucero, the parties agreed on the defendant's first parole eligibility date, and the first parole eligibility date specifically appeared in the record in Lehmkuhl . Rainer, ¶¶ 36, 67 ; Lucero, ¶ 12 ; Lehmkuhl, ¶ 13. Here, we lack both an agreement on defendant's first parole eligibility date and any evidence in the record of the date. We also lack legal argument and factual findings by the trial court on whether we should consider the effect any earned time or good time credits would have on defendant's first parole eligibility date, as argued by defendant on appeal. Again, absent factual findings on defendant's first parole eligibility date, this issue cannot be decided.
¶ 51 Because defendant did not present the issue to the trial court and we lack necessary factual findings, we decline to address it on appeal.
III. Conclusion and Directions
¶ 52 On remand, the trial court must first make an individualized determination based on factual findings whether life without parole is appropriate for defendant's Count 1 conviction. If the court determines that the sentence is appropriate, the sentence on Count 1 will stand affirmed, subject to defendant's *695 right to appeal that determination. If the court determines that life without parole is inappropriate, the sentence on Count 1 will be vacated and the court should impose an individualized sentence that takes into consideration the factors elucidated in Miller and discussed in this opinion, again subject to defendant's and the People's right to appeal.
¶ 53 Although we decline to address defendant's appellate argument with regard to the sentencing on his class 2 felony convictions, our opinion should not be considered a reflection on its merits. Additionally, defendant should not be precluded from raising this issue on remand, should he choose to do so. The law on this issue was still developing in Colorado at the time defendant filed his postconviction motion, as the trial court recognized. See Crim. P. 35(c)(VI)(a) (referring to claims based on a "new rule of constitutional law that was previously unavailable").
¶ 54 The case is remanded for resentencing on Count 1 consistent with this opinion.
JUDGE TERRY concurs.
JUDGE TAUBMAN specially concurs.

In his reply brief, defendant describes his sentence as "a life sentence plus another consecutive ninety-six years in DOC." We perceive this statement to be a mistake, as defendant was sentenced to a life sentence plus three consecutive sentences totaling 144 years, as correctly stated in defendant's opening brief.

Defendant was sentenced in 1999 to life without the possibility of parole under the mandatory statutory sentencing framework in place at the time.

The present case demonstrates the difficulty with mandatory imposition of a life sentence on a juvenile offender absent individualized consideration. In sentencing defendant, the court stated, "[W]hile you've eventually made a statement where you admitted hitting him [the victim], wielding the baseball bat, after your father urged you to tell the truth, it gives me no pleasure to give you life in prison without the possibility of parole, but that is absolutely ... mandatory, because that is what the law requires." Thus, the court indicated that defendant's accepting responsibility may have led the court to be more lenient in its sentencing decision, had it been given the authority to do so.

We recognize the General Assembly's 2006 amendment constitutes legislative action that applies to this issue and indicates the legislature's intent in 2006 for sentencing juvenile offenders convicted of felony 1 offenses committed after July 2006. But, we also note that the current legislative framework still leaves a gap regarding appropriate sentences to impose on juvenile offenders convicted of felony 1 murder who committed their offenses between 1990 and 2006. Defendant asserts that there are approximately fifty individuals confined in the Department of Corrections who committed class 1 felonies as juveniles during this time period. Another publication estimates that there are forty-eight. See Hannah Garcia, Two Years, No Cert, More Confusion, L. Wk. Colo., Nov. 18, 2014, http://perma.cc/B356-VHQA.