# United States Court of Appeals
## For the First Circuit

No. 13-1661

HAROLD EVANS-GARCÍA,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

No. 13-1662

ERIC JOEL CARRIÓN-CRUZ,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

APPLICATIONS FOR LEAVE TO FILE A SECOND
OR SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Hector L. Ramos-Vegas, Assistant Federal Public Defender,
Supervisor, Appeals Section, with whom Hector E. Guzman, Jr.,
Federal Public Defender, was on brief, for petitioners.
Robert A. Parker, Criminal Division, Appellate Section,
United States Department of Justice, with whom Rosa Emilia
Rodriguez-Velez, United States Attorney, District of Puerto Rico,
Mythili Raman, Acting Assistant Attorney General, Nelson Pérez-
Sosa, Chief, Appellate Division, United States Attorney's Office,

and <u>Denis J. McInerney</u>, Deputy Assistant Attorney General, were on brief, for respondent.

_____

February 28, 2014

_____

**KAYATTA, Circuit Judge**.  Harold Evans-García and Eric Joel Carrión-Cruz are each serving life sentences without the possibility of parole for crimes they committed when they were younger than eighteen years old.  After each of them unsuccessfully exhausted a direct appeal and a petition for habeas relief, the United States Supreme Court decided Miller v. Alabama, 132 S. Ct. 2455 (2012).  In Miller, the Supreme Court held that the Eighth Amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  Miller, 132 S. Ct. at 2469.  Evans-García and Carrión-Cruz each now wish to pursue a new habeas petition, this time attempting to employ Miller to secure a potential reduction in their sentences.  Under the Antiterrorism and Effective Death Penalty Act, 110 Stat. 1214 (1996), they cannot pursue their new petitions unless we first certify that the proposed petitions satisfy the requirements of an exception to what is otherwise a bar on second or successive habeas petitions.  28 U.S.C. § 2255(h).  For reasons described below, we grant certification to Evans-García but deny it to Carrión-Cruz.

## I. Background

Evans-García's and Carrión-Cruz's crimes are described in our prior opinions.  See United States v. Evans-García, 322 F.3d 110 (2003); United States v. Carrión-Cruz, 92 F.3d 5 (1996).  In brief, they were each convicted of a carjacking resulting in death.

-3-

Evans-García committed his crime in 1996, seven days before his eighteenth birthday, while Carrión-Cruz was fifteen years and six months old at the time of his crime in 1994.

At the time the petitioners were sentenced, the district court was bound to follow the federal sentencing guidelines, which had not yet been ruled advisory by the Supreme Court. See United States v. Booker, 543 U.S. 220, 259 (2005). Under the guidelines, the district court would first calculate an "offense level" between one and forty-three, and then place the defendant in one of six criminal history categories. See U.S. Sentencing Guidelines Manual §§ 1B1.1, 5A (2001). Based on the calculated offense level and criminal history category, the guidelines determined the applicable range within which the district court was required to fix a sentence. Id. The court could impose a sentence above or below the range only if it found facts supporting any of several specified grounds for departure. Id.

Evans-García's offense level and criminal history led to a range including just one sentence: life in prison without the possibility of parole. While the guidelines allowed for a potential downward departure from the otherwise mandated sentence for specified reasons not including youth, the court found none of those reasons applicable. For Carrión-Cruz, by contrast, the guidelines provided for a lower sentencing range of 292 to 365 months in prison, primarily because he pled guilty. However, due

to the "sordid facts of the case,"[1] and even after considering the defendant's "youth and limited intellect," the district court decided to depart upward from the guidelines, imposing a sentence of life without parole. Carrión-Cruz, 92 F.3d at 6.

## II. Legal Standard

Like other federal prisoners seeking to file "second or successive" habeas petitions, Evans-García and Carrión-Cruz must obtain certification from a court of appeals before presenting their petitions to the district court. See 28 U.S.C. § 2255(h). In deciding whether to grant certification in the absence of any newly discovered evidence, we ask whether the petition "contain[s]... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." See 28 U.S.C. § 2255(h)(2). We follow the procedural requirements laid out in section 2244, which governs state prisoners' petitions but is cross-referenced in the section applicable to federal prisoners such as the petitioners here. See 28 U.S.C. § 2255(h) ("A second or successive motion [by a federal prisoner] must be certified as provided in section 2244 . . . .").

Section 2244 specifies that the court of appeals should ask whether the "the application makes a prima facie showing" that

---

[1] Carrión-Cruz executed an elderly couple who stopped to assist him as he walked along the road from the scene of another murder he had just committed.

-5-

it satisfies the applicable requirements. 28 U.S.C. § 2244(b)(3)(C). See also Tyler v. Cain, 533 U.S. 656, 664 (2001) ("[T]he court of appeals must determine whether the application 'makes a prima facie showing that [i]t satisfies the [second habeas standard].'" (second and third alterations in original) (quoting 28 U.S.C. § 2244(b)(3)(C)). We have previously held that a prima facie showing at the certification stage is "a sufficient showing of possible merit to warrant a fuller exploration by the district court." Rodriquez v. Superintendent, Bay State Corr. Ctr., 139 F.3d 270, 273 (1st Cir. 1998) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)). In other words, our task is not to decide for certain whether the petition has merit, but rather to determine whether "it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition." Id. (quoting Bennett, 119 F.3d at 469-70).

Consistent with the statute and our precedent, we find good reason to refrain from a full inquiry at this stage, even on a purely legal issue such as retroactivity. We generally do not rule on questions--whether of fact or of law--until a district court has done so, Singleton v. Wulff, 428 U.S. 106, 120 (1976), a practice that enhances the quality of our decisions both by allowing us to consider the district court's analysis and by allowing the parties to hone their arguments before presenting them

to us.  Moreover, in ruling on certification requests, we often must strive to move more quickly than a full consideration of the merits might reasonably require.  See Rodriquez, 139 F.3d at 272-73 (noting that section 2244(b)(3)(D) establishes a thirty day limit for certification decisions, but holding that the limit is not fully mandatory).

### III. Analysis

**A.**  **We Accept the Government's Concession that Evans-García May Present His Petition to the District Court.**

The government concedes that Miller announced a new rule of constitutional law that was previously unavailable.  In particular, Miller held that the Eighth Amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012).  This rule was new because it was "not dictated by precedent existing at the time the defendant's conviction became final," Graham v. Collins, 506 U.S. 461, 467 (1993) (quoting Teague v. Lane, 489 U.S. 288, 301 (1989)), and it was previously unavailable because it was issued after the petitioners were sentenced (in 2001 and 1995, respectively) and pursued their first habeas petitions (in 2004 and 2005, respectively).

Whether the new rule announced in Miller has been made

retroactive by the Supreme Court presents a much closer question.[2] We need not answer that question, however, because the government has also conceded that <u>Miller</u> has been made retroactive, at least under the prima facie standard. Two circuits have certified second or successive habeas petitions based on <u>Miller</u> by relying, in whole or in part, on the same government concession. <u>See</u> <u>Johnson</u> v. <u>United States</u>, 720 F.3d 720, 720 (8th Cir. 2013) ("The government here has conceded that <u>Miller</u> is retroactive . . . and we therefore conclude that there is a sufficient showing . . . ."); <u>Wang</u> v. <u>United States</u>, No. 13-2426 (2d Cir. July 16, 2013) (unpublished) (relying in part on the government's concession to certify a second or successive habeas petition based on <u>Miller</u>). The government plays a central role in criminal law enforcement. Moreover, it is fair to say that the government is generally resistant to collateral review of criminal convictions and sentences. Accordingly, one might conclude that where the government concedes that a rule favoring prisoners has been made retroactive, that

---

[2] The issue has divided several other circuits that have considered it. <u>Compare</u> <u>In re Pendleton</u>, 732 F.3d 280, 282 (3d Cir. 2013) (granting a request for certification on the grounds that petitioners had made a prima facie showing of <u>Miller</u>'s retroactivity); <u>with</u> <u>Craig</u> v. <u>Cain</u>, 2013 WL 69128, *2 (5th Cir. Jan. 4, 2013) (per curiam) (denying a request to rehear denial of certification on the grounds that <u>Miller</u> has not been made retroactive); <u>In re Morgan</u>, 713 F.3d 1365, 1367-68 (11th Cir. 2013) (denying a request for certification on the same grounds). <u>See also</u> <u>In re James</u>, No. 12-287 (4th Cir. May 5, 2013) (unpublished) (granting certification of a second or second successive habeas petition based on <u>Miller</u> without discussion).

position has at least "possible merit . . . warrant[ing] a fuller exploration by the district court."  Rodriquez, 139 F.3d at 273 (1st Cir. 1998) (internal quotation marks omitted).

"[C]ourts are generally limited to addressing the claims and arguments advanced by the parties."  Henderson, 131 S. Ct. at 1202.  See also Castro, 540 U.S. at 386 (2003) (Scalia, J., concurring in part and concurring in the judgment) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").  This is not to say that a government concession necessarily results in an opinion adopting the conceded position.  We have sometimes chosen not to accept such concessions, as where the government's position is clearly erroneous and has been rejected by a lower court.  See Computervision Corp. v. C.I.R., 164 F.3d 73, 75 (1st Cir. 1999). Here, though, the retroactivity issue is far from clear, we have no district court order to review, and our own de novo consideration is limited to ascertaining the presence of a prima facie demonstration.  In short, the factors that might warrant greater reticence in giving force to a government concession weigh less in this context.  We are cognizant, too, that if we err in granting certification, ample opportunity for correcting that error will remain.  Conversely, should we err in denying certification, Evans-García will have no opportunity to appeal or seek rehearing en

banc.  28 U.S.C. § 2244(b)(3)(E).

Further, we see nothing in the habeas statute that would require us to apply special scrutiny to a government concession on retroactivity.  Cf. Allen v. Parker, 2013 WL 4712735, *4 (6th Cir. Sept. 3, 2013) (unpublished) (accepting the government's concession on habeas review that a sentence was contrary to federal law, although the concession was "wrong as a matter of law").  For example, our approach does not interfere with Congress's goal of "streamlining federal habeas proceeding."  Rhines v. Weber, 544 U.S. 269, 277 (2005).  Experience teaches that government concessions of this kind are exceedingly rare, and in any event acceptance of such concessions may do more to simplify habeas review (as here) than to complicate it.  Nor is there any apparent absence of subject matter jurisdiction that might capture our attention, sua sponte.  See Gonzalez v. Thaler, 132 S. Ct. 641, 648-49 (2012).

We have also considered as a possible objection to our approach the fact that the statute indicates that the court itself must "determine" whether the petitioner has satisfied the applicable requirements.  See 28 U.S.C. § 2244(b)(3)(C) (providing that a court should grant certification "only if it determines that the application makes a prima facie showing.").  Yet, it is always the case that a court must determine whether the requirements of a statute have been satisfied in deciding a case arising under that

statute. This does not mean, however, that courts cannot utilize the waiver doctrine as a tool in making such determinations. Indeed, in other contexts in which courts are instructed to "determine" a matter, courts can clearly accept concessions by the parties. For example, Federal Rule of Civil Procedure 26 provides that where a party asserts that initial disclosures are not appropriate in an action, "the court must determine what disclosures, if any, are to be made and must set the time for disclosure." Fed. R. Civ. P. 26(a)(1)(C). Yet surely courts can (and regularly do) accept agreements between parties on these matters with no further examination.

Evans-García's petition plainly contains--indeed relies on--the holding in <u>Miller</u> outlawing mandatory sentence of life without parole for juvenile offenders. In view of the government's concession, we certify that Evans-García has made a prima facie showing that this rule qualifies as a basis for habeas relief on a second or successive petition, and so we allow him to file his petition with the district court.

## B. We Cannot Certify Carrión-Cruz's Petition.

The government argues that we should deny Carrión-Cruz's request for certification because he, unlike Evans-García, was not subject to a mandatory life sentence. The habeas statute does not specify what inquiry, if any, we should make into the merits of a petitioner's reliance on a new constitutional rule at the

-11-

certification stage. Other circuits have taken divergent approaches. Compare In re Morris, 328 F.3d 739, 740-41 (5th Cir. 2003) (requiring the petitioner to make a prima facie showing that he was "mentally retarded" to present a petition based on a new constitutional rule barring execution of "mentally retarded" individuals), In re Bowling, 422 F.3d 434, 436 (6th Cir. 2005) (in the same situation, requiring "some documentation of [the petitioner's] claim that he is mentally retarded" (internal quotation marks omitted)), and In re Holladay, 331 F.3d 1169, 1174 (11th Cir. 2003) (in the same situation, requiring evidence that "establish[es] a reasonable likelihood that [the petition] is in fact mentally retarded"), with Ochoa v. Sirmons, 485 F.3d 538, 545 (10th Cir. 2007) (criticizing Morris, Bowling, and Holladay for "adding the merits component to the authorization inquiry" contrary to the text of the statute).

We need not fully engage in this debate because there are no disputed factual issues, such as mental capacity, that must be resolved to determine whether Miller plausibly applies to Carrión-Cruz's situation. Instead, Miller applies if a petitioner was (1) younger than eighteen years old at the time of the crime, which Carrión-Cruz clearly was; and (2) subject to a mandatory sentence of life in prison without the possibility of parole, which we can determine as a matter of law by reference to legal documents such as statutes, sentencing guidelines, and court documents. See

-12-

Miller, 132 S. Ct. at 2469. We therefore need only hold that a circuit court should deny certification where it is clear as a matter of law, and without the need to consider contested evidence, that the petitioner's identified constitutional rule does not apply to the petitioner's situation. To grant certification in such circumstances would be to send the district court on a fool's errand.

Under this standard, we must deny Carrión-Cruz's request because he was not sentenced pursuant to any statute or guideline that mandated a sentence of life without parole. He pled guilty to the same crime of which Evans-García was convicted, and he was therefore potentially subject to a statutory punishment range of any number of years in prison up to life, or the death penalty. Unlike Evans-García, however, Carrión-Cruz's offense level under the guidelines was lowered because he accepted responsibility for his crime and pled guilty. Consequently, the guidelines range for Carrión-Cruz was 292 months to 365 months, not life. Carrión-Cruz received a sentence of life without parole only because the sentencing judge had discretion to depart upwards under the guidelines exception for crimes leading to multiple deaths and under the general exception for "circumstances that render the case atypical and take it out of the 'heartland' for which the applicable guideline was designed." United States v. Carrión-Cruz, 92 F.3d 5, 6 (1st Cir. 1996). The court exercised that discretion

-13-

based on the "sordid facts of the case"--four killings, including two of "good samaritans who had stopped to offer assistance."  Id.

It is true that in explaining its decision to sentence Carrión-Cruz to life without parole, the district court did not expressly say that it was taking into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," as the Supreme Court required in Miller.  132 S. Ct. at 2469.  As we noted in upholding the sentence, however, the district court in exercising its discretion "took full account" of Carrión-Cruz's youth.  Carrión-Cruz, 92 F.3d at 6.  Even if such an accounting somehow fell short under Miller--and we do not hold that it did--such a procedural shortfall did not violate the bar on mandatory life sentences for juveniles, the only holding of Miller that the government has conceded qualifies for habeas relief on a second or successive petition, and the only holding on which the petitioners have made a prima facie showing of retroactivity.  Cf. Tyler v. Cain, 533 U.S. 656, 668 (2001) (O'Connor, J., concurring) (noting that a rule has been made retroactive by the Supreme Court if the Court expressly declares it retroactive or issues multiple holdings that "logically dictate . . . retroactivity"); Teague v. Lane, 489 U.S. 288, 310 (1989) (holding that new rules of criminal procedural are generally not retroactive).

## IV. Conclusion

For the foregoing reasons, we certify Evans-García's habeas petition for consideration by the district court. We deny certification to Carrión-Cruz.

So ordered.