JUDGE TAUBMAN specially concurring.
¶ 55 I concur with the conclusion that the life sentence without parole of defendant, Terrance Wilder, is unconstitutional. I further agree that the appropriate remedy is to vacate Wilder's sentence and remand the case to the trial court for an individualized sentencing determination based on the factors identified in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). However, I write separately in order to address the following three points.
¶ 56 First, although I authored the majority opinion in People v. Valles, 2013 COA 84, ¶ 74, 412 P.3d 537, I now believe that the best remedy to implement the holding in Miller is a remand to the trial court for an individualized sentencing hearing. Second, I explain why, notwithstanding the People's concession, I believe Miller applies retroactively. Third, I emphasize that on remand, the trial court should consider whether Wilder's aggregate 144-year sentence for his class 2 convictions is unconstitutional in light of the holdings in People v. Rainer, 2013 COA 51, ¶ 69, 412 P.3d 520 (cert granted Dec. 22, 2014); People v. Lucero, 2013 COA 53, ¶ 2, 410 P.3d 467 (cert granted Dec. 22, 2014); and People v. Lehmkuhl, 2013 COA 98, ¶ 13, 369 P.3d 635 (cert granted Dec. 22, 2014).
I. People v. Valles
¶ 57 First, I authored the opinion in Valles, which followed People v. Banks, 2012 COA 157, ¶ 60, 412 P.3d 417 (cert granted June 24 2013), and affirmed the juvenile defendant's sentence as to life imprisonment but vacated it to the extent that he was denied the possibility of parole. Valles, ¶¶ 71-75, 412 P.3d at 551 ; Banks, ¶ 60, 412 P.3d at 431. There, the division remanded the case to the trial court to modify the sentence by adding a provision for the possibility of parole after forty years. Valles, ¶¶ 71-75, 412 P.3d at 551.
¶ 58 While Valles argued that Banks was wrongly decided and requested that the division remand for the individualized determination we adopt here, his arguments contained only conclusory assertions, unsupported by legal authority and citation. Id. at ¶ 73 n. 7, 412 P.3d at 551 n. 7. As a result, the division declined to consider Valles' argument. Having fully considered the issues in Wilder's case, I now believe that the best remedy to implement the Supreme Court's holding in Miller v. Alabama is not that set forth in Banks and Valles, but that set forth by the majority here.
II. Retroactivity of Miller v. Alabama
¶ 59 Second, the majority accepts the People's concession that Miller applies retroactively. Notwithstanding the People's concession, I write separately to explain why I believe Miller applies retroactively. See People v. Corral , 174 P.3d 837, 839 (Colo. App. 2007) (appellate court is not bound by a party's concessions).
¶ 60 In Edwards v. People, 129 P.3d 977, 983 (Colo. 2006), the Colorado Supreme Court adopted the test devised in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), for determining when a new rule of constitutional law should be applied *696 to cases on collateral review. According to Teague, decisions that establish new constitutional rules apply to all criminal cases pending on direct review. Id . at 304, 109 S.Ct. 1060 ; see also Schriro v. Summerlin, 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). However, where a conviction is final, the new rule is not applied retroactively to cases on collateral review except in two instances. Summerlin, 542 U.S. at 351, 124 S.Ct. 2519.
¶ 61 First, new substantive rules apply retroactively. Id. Such rules "narrow the scope of a criminal statute ... as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." Id. at 352, 124 S.Ct. 2519 ; see also People v. Johnson, 142 P.3d 722, 725 (Colo. 2006). They apply retroactively "because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." Summerlin, 542 U.S. at 352, 124 S.Ct. 2519 (internal quotation marks omitted).
¶ 62 In Summerlin, the Supreme Court explained that substantive rules "alter[ ] the range of conduct or the class of persons that the law punishes," whereas procedural rules "regulate only the manner of determining the defendant's culpability." Id. at 353, 124 S.Ct. 2519.
¶ 63 Second, retroactive effect is given to "watershed rules of criminal procedure." Id. at 352, 124 S.Ct. 2519 (internal quotation marks omitted). As a general rule, new procedural rules do not apply retroactively because they "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id. This definition of procedural rules applies equally to new rules that change the manner of determining a defendant's sentence. See Lambrix v. Singletary, 520 U.S. 518, 539, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ; Sawyer v. Smith, 497 U.S. 227, 241, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). Nonetheless, retroactive effect is given "to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Summerlin, 542 U.S. at 352, 124 S.Ct. 2519 (internal quotation marks omitted).
¶ 64 Therefore, to determine whether Miller should be applied retroactively, we must consider whether the holding in Miller should be characterized as substantive or procedural. Neither the United States Supreme Court nor the Colorado Supreme Court has decided whether Miller applies retroactively; however, the Colorado Supreme Court recently granted certiorari to decide this issue. See People v. Vigil, 2014 WL 5423908 (Colo. No. 14SC495, Oct. 27, 2014) (unpublished order) (certiorari granted to determine whether Miller is to be applied retroactively to cases on collateral review).[1]
¶ 65 The majority of state supreme courts to consider the issue have held that Miller applies retroactively. People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709 (Ill. 2014) ; State v. Ragland, 836 N.W.2d 107, 115 (Iowa 2013) ; Diatchenko v. Dist. Attorney, 466 Mass. 655, 1 N.E.3d 270, 281 (2013) ; Jones v. State, 122 So.3d 698, 702 (Miss. 2013) ; State v. Mantich, 287 Neb. 320, 842 N.W.2d 716, 731 (2014) ; Petition of State, 166 N.H. 659, 103 A.3d 227 (2014) ; Aiken v. Byars, 410 S.C. 534, 765 S.E.2d 572, 575 (2014) ; Ex parte Maxwell, 424 S.W.3d 66, 75 (Tex.Crim.App.2014) ; State v. Mares, 335 P.3d 487, 501 (Wyo. 2014). Another two intermediate state appellate courts have reached the same conclusion. In re Rainey, 168 Cal.Rptr.3d 719, 724 (Cal. Ct. App. 2014), superseded by *697 In re Rainey, 172 Cal.Rptr.3d 651, 326 P.3d 251 (Cal. 2014) ; Toye v. State, 133 So.3d 540, 547 (Fla. Dist. Ct. App. 2014).
¶ 66 To be sure, a sizeable minority of state supreme courts have concluded that Miller does not apply retroactively. State v. Tate, 130 So.3d 829, 838 (La. 2013) ; People v. Carp, 496 Mich. 440, 852 N.W.2d 801, 814 (2014) ; Chambers v. State, 831 N.W.2d 311, 331 (Minn. 2013) ; Commonwealth v. Cunningham, 622 Pa. 543, 81 A.3d 1, 10 (2013). Further, at least two intermediate state appellate courts have reached this same conclusion. State v. Duncan, No. CR-13-0879, 185 So.3d 487, 2014 WL 4387707 (Ala. Crim. App. Sept. 5, 2014) ; Geter v. State, 115 So.3d 375 (Fla. Dist. Ct. App. 2012) ; Gonzalez v. State, 101 So.3d 886 (Fla. Dist. Ct. App. 2012).
¶ 67 In addition, the majority of federal circuit courts of appeal have effectively concluded that Miller applies retroactively for the purpose of permitting a prisoner to file a second habeas corpus petition. Some circuits have specifically concluded that Miller applies retroactively. In re Simpson, 555 Fed.Appx. 369, 370 (5th Cir. 2014) ; In re Pendleton, 732 F.3d 280, 282 (3d Cir. 2013). Others have accepted prosecutors' concessions that Miller applies retroactively. Evans-Garcia v. United States, 744 F.3d 235, 238 (1st Cir. 2014) ; Johnson v. United States, 720 F.3d 720, 720-21 (8th Cir. 2013) ; Stone v. United States, No. 13-1486 (2d Cir. June 7, 2013); Wang v. United States, No. 13-2426 (2d Cir. July 16, 2013); Williams v. United States, No. 13-1731 (8th Cir. Aug. 29, 2013). However, two circuits have concluded that Miller does not apply retroactively. See In re Morgan, 713 F.3d 1365, 1367-68 (11th Cir. 2013) ; Craig v. Cain, No. 12-30035, 2013 WL 69128, at *2 (5th Cir. Jan. 4, 2013).
¶ 68 Additionally, while I am unaware of a formal United States Justice Department policy on the issue, federal prosecutors in published cases have taken the position that Miller is substantive and therefore retroactive. See, e.g., Evans-Garcia, 744 F.3d at 238 (accepting government's concession that Miller applies retroactively); Johnson, 720 F.3d at 721 ("The government here has conceded that Miller is retroactive...."); Wang, No. 13-2426, slip op. at 2 (relying in part on government concession to conclude Miller is retroactive). Significantly, in Stone v. United States, the United States Attorney's office in the Eastern District of New York submitted a lengthy brief affirmatively arguing that Miller created a new substantive rule and should be applied retroactively. See Gov't's Response to Petitioner's Motion for Reconsideration of Order Denying Motion for Leave to File a Second Motion Pursuant to 28 U.S.C. § 2255 at 10-11, Stone v. United States, No. 13-1486 (2d Cir. May 30, 2013).
¶ 69 In these cases, the debate over Miller 's retroactivity centers on whether the decision merely establishes new procedures for trial courts to follow before sentencing a juvenile to life without the possibility of parole, or whether it establishes a substantive prohibition on mandatory life sentences without the possibility of parole for juveniles. I agree with those courts that have concluded that the holding in Miller is both substantive and procedural and should be applied retroactively because of the substantive component of its holding. Mantich, 842 N.W.2d at 729 ( Miller's holding "does not neatly fall into the existing definitions of either a procedural rule or substantive rule."); Mares, 335 P.3d at 506 ("[C]ategorizing the Miller holding as substantive or procedural is difficult because the holding has aspects of both.").
¶ 70 In my view, Miller contains two new rules of constitutional law, one substantive and the other procedural. First, the Court held that mandatory life sentences without the possibility of parole are unconstitutional for juveniles. Miller, 567 U.S. at 478-80, 132 S.Ct. at 2469. Therefore, Miller narrows the scope of criminal statutes by placing a particular class of persons, juveniles, "beyond the State's power to punish" with mandatory life without parole sentences. See Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519. To that extent, the holding in Miller is substantive.
¶ 71 Prior decisions prohibiting the imposition of capital punishment on specific classes of individuals are instructive. See Miller, 567 U.S. at 473-77, 132 S.Ct. at 2466-67 (comparing life without parole to death sentences). The Supreme Court has held that the Eighth Amendment "places a substantive *698 restriction on the State's power" to impose the death penalty on mentally disabled offenders, juveniles, and those charged with nonhomicide crimes. Roper v. Simmons, 543 U.S. 551, 567, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (internal quotation marks omitted); Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) ; see also Kennedy v. Louisiana, 554 U.S. 407, 421, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008). These are substantive rules that are applied retroactively because they lower defendants' statutory maximum punishment. E.g., In re Sparks, 657 F.3d 258, 262 (5th Cir. 2011) ("The Supreme Court's decision in Atkins barring the execution of the mentally retarded has been given retroactive effect, as has the Court's decision in Roper ." (citation omitted)). Miller is no less substantive. It abolishes a mandatory punishment and replaces it with a discretionary procedure.
¶ 72 Both Miller and those decisions categorically prohibiting the imposition of capital punishment on specific classes of individuals require a change in the range of available punishments for a class of defendants. Therefore, applying Miller retroactively "ensures that juvenile homicide offenders do not face a punishment that our criminal law cannot constitutionally impose on them." Diatchenko, 1 N.E.3d at 281.
¶ 73 I recognize that Miller does not categorically bar life without the possibility of parole for juvenile offenders. 567 U.S. at 482-83, 132 S.Ct. at 2471. However, Miller does prohibit mandatory life sentences without the possibility of parole, a categorical bar that must be applied retroactively.
¶ 74 Second, Miller also sets forth a new procedural rule. It requires courts to consider certain factors before sentencing a juvenile to life without parole. Id. at 478-80, 132 S.Ct. at 2469. Specifically, sentencing courts must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. Factors to consider include the juvenile's "diminished culpability and heightened capacity for change." Id. In this sense, Miller resembles those decisions modifying the procedures for the imposition of the death penalty that the supreme court has declined to apply retroactively. See Summerlin, 542 U.S. at 353, 124 S.Ct. 2519 (holding that the rule announced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), that a jury, not a judge, must determine aggravating factors necessary for the imposition of the death penalty, is procedural); Lambrix, 520 U.S. at 539-40, 117 S.Ct. 1517 (holding that the rule announced in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), that where a state places capital-sentencing authority in two actors rather than one, neither can weigh invalid aggravating circumstances, is procedural); Sawyer, 497 U.S. at 241-42, 110 S.Ct. 2822 (holding that the rule announced in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), that the Eighth Amendment prohibits capital punishment by a sentencer who falsely believes that responsibility for determining the appropriateness of capital sentence rest elsewhere, is procedural); Saffle v. Parks, 494 U.S. 484, 494-95, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (holding that petitioner's proposed rule prohibiting an "anti-sympathy" jury instruction would be procedural).
¶ 75 Therefore, Miller is also procedural because it "altered the permissible methods by which the State [can] exercise its continuing power ... to punish juvenile homicide offenders by life imprisonment without the possibility of parole." Tate, 130 So.3d at 838.
¶ 76 Those courts that recognize Miller as part procedural and part substantive have concluded that its holding should apply retroactively. See Mares, 335 P.3d at 507 ("We are more persuaded, however, by the analyses of those courts that have concluded that the rule announced in Miller is, despite its procedural aspects, a substantive rule."); Mantich, 842 N.W.2d at 731 ("[T]he Miller rule [is] more substantive than procedural."); Davis, 6 N.E.3d at 722 (concluding that Miller is both procedural and substantive but should be applied retroactively because its procedural aspects are the result of its substantive change in the law); Ragland, 836 N.W.2d at 115 (same). I agree with these decisions and therefore conclude that Miller 's procedural and substantive holdings apply retroactively. In contrast, the above- *699 noted death penalty cases modified only the procedures necessary to impose the death penalty and therefore were properly held not to apply retroactively. See, e.g., Summerlin, 542 U.S. at 353, 124 S.Ct. 2519.
¶ 77 I further conclude that Miller 's procedural component constitutes a "watershed rule of criminal procedure." In order to qualify as "watershed," a new rule must meet two requirements: (1) it must be necessary to prevent an impermissibly large risk of an inaccurate result and (2) it must "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Whorton v. Bockting, 549 U.S. 406, 418, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) (internal quotation marks omitted).
¶ 78 First, the mandatory imposition of life without parole sentences for juveniles, with no opportunity for an individualized determination, posed an impermissibly large risk of inaccurate sentencing. The Miller Court recognized that given "children's diminished culpability and heightened capacity for change ... appropriate occasions for sentencing juveniles to [life without parole] will be uncommon." 567 U.S. at 479, 132 S.Ct. at 2469. In doing so, the Court cast doubt on the reliability and accuracy of mandatory life without parole sentences for juveniles. Because sentences that were once mandatory in many jurisdictions will be rare under Miller's new procedures, I conclude that prior to Miller, mandatory life without parole schemes for juveniles posed an impermissibly large risk of inaccurate sentencing.
¶ 79 Second, Miller established the specific factors to be considered before a court may impose a life without parole sentence on a juvenile. Prior to Miller, the Eighth Amendment did not require an individualized hearing for juveniles facing sentences of life without parole. After Miller, sentencing courts must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. Miller created a right to individualized sentencing previously unrecognized by most states and the federal government.
¶ 80 I conclude that these new factors "constitute a previously unrecognized bedrock procedural element[ ]" which, according to Miller, are "essential to the fairness" of any sentencing hearing. Whorton, 549 U.S. at 421, 127 S.Ct. 1173 ; Miller, 567 U.S. at 477, 132 S.Ct. at 2468 ("[I]n imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult."). The imposition of these new factors "effect[s] a profound and sweeping change" to the sentencing procedures for juveniles. Whorton, 549 U.S. at 421, 127 S.Ct. 1173 (internal quotation marks omitted). They replace the mandatory sentencing schemes previously in place in a majority of states, and form the "bedrock" procedures for all sentencing courts considering lifetime without parole for a juvenile offender.
¶ 81 I recognize that the supreme court has repeatedly held that new rules altering the procedures for the imposition of the death penalty do not fall into Teague 's narrow "watershed rule" exception. See Summerlin, 542 U.S. at 355-58, 124 S.Ct. 2519 ; Lambrix, 520 U.S. at 539-40, 117 S.Ct. 1517 ; Sawyer, 497 U.S. at 241-42, 110 S.Ct. 2822 ; Saffle, 494 U.S. at 494-95, 110 S.Ct. 1257. While, like Miller, the new rules considered in those cases created new procedural requirements, none was as fundamental as Miller . The rules considered in Summerlin, Lambrix, Sawyer, and Saffle merely modified pre-existing procedures for the imposition of the death penalty. Summerlin, 542 U.S. at 355-58, 124 S.Ct. 2519 ; Lambrix, 520 U.S. at 539-40, 117 S.Ct. 1517 ; Sawyer, 497 U.S. at 241-42, 110 S.Ct. 2822 ; Saffle, 494 U.S. at 494-95, 110 S.Ct. 1257. Miller is a "watershed rule" because it established procedures-where before there were none-to be followed before a juvenile can be sentenced to life without parole.
¶ 82 I also recognize that only one state appellate court has concluded that Miller announced a new "watershed rule" of criminal procedure, and its decision was abrogated by a higher authority. See People v. Williams, 367 Ill.Dec. 503, 982 N.E.2d 181, 196 (Ill. App. Ct. 2012), abrogated by People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709 (Ill.2014). However, because Miller (1) explicitly cast doubt on the accuracy and reliability of mandatory life without parole sentences *700 for juveniles, and (2) established procedures for courts considering lifetime without parole sentences for juvenile offenders, I conclude that Miller 's new procedural rule is a "watershed rule of criminal procedure."
¶ 83 Accordingly, I conclude that Miller announced a new constitutional rule that is both substantive and procedural. I further conclude that the decision applies retroactively to cases on collateral review.
III. Sentencing for Class 2 Felonies
¶ 84 Finally, if, on remand, the trial court determines that the appropriate sentence for Wilder's class 1 conviction is not life without the possibility of parole, it should consider whether Wilder's sentence for the class 1 conviction and his 144-year sentence for his class 2 felonies are functionally equivalent to a life sentence without parole.
¶ 85 In Graham v. Florida, 560 U.S. 48, 75, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Supreme Court held that the Eighth Amendment categorically prohibits sentencing a juvenile convicted of a nonhomicide crime to life imprisonment without the possibility of parole. In Rainer, a division of this court concluded that the "rule announced in Graham is a new substantive rule that should be applied retroactively to all cases involving juvenile offenders under the age eighteen at the time of the offense, including those cases on collateral review." ¶ 21, 412 P.3d at 525.
¶ 86 The division relied on Center for Disease Control (CDC) life expectancy data to conclude that Rainer's sentence was the functional equivalent to life without parole, and therefore unconstitutional, because it did not offer him a meaningful opportunity to obtain release before the end of his expected life span. Id. at ¶¶ 38, 66, 412 P.3d at 527, 533-34.
¶ 87 In Lucero, a different division addressed a cruel and unusual punishment challenge to an eighty-four-year sentence for conspiracy to commit first degree murder, attempted first degree murder, and two counts of second degree murder, all committed when the defendant was fifteen years old. ¶ 2, 410 P.3d at 468. Because Lucero would be eligible for parole when he was fifty-seven years old, and his life expectancy was seventy-five years, the division held that he had a meaningful opportunity for release during his lifetime, and therefore his sentence was not unconstitutional. Id. at ¶¶ 12-13, 410 P.3d at 470.
¶ 88 Finally, in Lehmkuhl, another division affirmed the district court's use of statutory mortality tables to conclude that Lehmkuhl's sentence was constitutional because he would become eligible for parole when he was 67 years old, and his life expectancy was 78.2 years. ¶ 13, 369 P.3d at 637 ; see also Ch. 317, sec. 1, § 1325-103, 2002 Colo. Sess. Laws 1354-58 (statutory mortality tables). The division rejected Lehmkuhl's argument that the district court erred in applying statutory mortality tables instead of CDC life expectancy data. Lehmkuhl, ¶¶ 14-17, 369 P.3d at 637-38. The division also denied the argument, which was unsupported by data or legal authority, that Lehmkuhl's life expectancy is shorter than that indicated by CDC data because the life expectancy of a person incarcerated is lower than that of the general population. Id. at ¶ 18, 369 P.3d at 638.
¶ 89 Here, Wilder contends that his aggregate 144-year sentence for second degree murder, attempted murder, conspiracy to commit murder, and accessory to the commission of a class 1 or 2 felony, all class 2 felonies, is unconstitutional under Graham . On remand, the trial court should consider this argument in light Rainer, Lucero, and Lehmkuhl. Specifically, the court should consider the evidence of Wilder's life expectancy and determine whether his aggregate 144-year sentence, together with the sentence imposed on remand for his class 1 felony murder conviction (unless it is life without the possibility of parole), leaves him a meaningful opportunity for release during his lifetime.

The United States Supreme Court granted certiorari in Toca v. Louisiana, 574 U.S. ----, ----. 135 S.Ct. 781, 781, 190 L.Ed.2d 649 (2014), to decide whether Miller is to be retroactively applied. That case was dismissed as moot, 574 U.S. ----, 135 S.Ct. 1197, 191 L.Ed.2d 149, 2015 WL 507612 (2015), after the petitioner, George Toca, entered into a plea agreement with prosecutors and was released from prison. See Letter from Donna Andrieu et al. and Bryan A. Stevenson et al., Attorneys for Respondent and Petitioner in Toca v. Louisiana, No. 14-6381, to Scott S. Harris, Clerk, Supreme Court of the United States (Feb. 2, 2015) (on file in the Clerk of the United States Supreme Court's case file).